UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| K.J.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>    Defendants. | Case No. 23-cv-03990-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 12, 16 |

**INTRODUCTION**

The plaintiff, K.J., seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for supplemental security income (SSI) benefits under Title XVI of the Social Security Act (SSA).[1] This is his third petition to this court and follows two previous remands to the agency.[2] The plaintiff moved for summary judgment.[3] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[4] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument. All parties consented to

---

[1] Compl. – ECF 1; Mot. – ECF No. 12. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See Jones v. Berryhill*, No. 17-CV-04241-LB, 2018 WL 7106674 (N.D. Cal. Oct. 24, 2018); *K.J. v. Kijakazi*, No. 20-CV-03245-LB, 2022 WL 327709 (N.D. Cal. Feb. 3, 2022).

[3] Mot. – ECF No. 12.

[4] Cross-Mot. – ECF No. 16.

ORDER – No. 23-cv-03990-LB

magistrate-judge jurisdiction.[5] The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for the calculation of benefits.

## STATEMENT

The court assumes familiarity with the record and incorporates by reference the procedural history outlined in its prior two orders. After this court's second remand, the ALJ held a hearing on February 28, 2023, and heard testimony from the plaintiff and vocational expert (VE) Stacia Schonbrun.[6] It was held telephonically due to the COVID-19 pandemic.[7] The ALJ issued an unfavorable decision on May 3, 2023.[8] The plaintiff appealed pursuant to 42 U.S.C. §§ 405(g), (h), 1383(c)(3). The court also assumes familiarity with the record and incorporates by reference the medical evidence summaries and summaries of prior administrative hearings provided in its two prior orders. All the medical evidence in the instant action predates this court's February 3, 2022 order, and all the medical evidence at issue in the parties' briefing predates this court's earlier, October 24, 2018 order.[9] The next sections summarize the most recent administrative hearing and findings.

**1. February 28, 2023, Administrative Hearing**

    **1.1    The Plaintiff's Testimony**

The ALJ questioned the plaintiff, who was represented by counsel.[10] In an opening statement, plaintiff's counsel amended the plaintiff's disability onset date to March 9, 2013.[11] The plaintiff

---

[5] Consents – ECF Nos. 4, 6.

[6] Administrative Record 959. Administrative Record (AR) citations refer to the page numbers in the bottom right-hand corner of the AR.

[7] AR 961.

[8] AR 940–52.

[9] Ct. Tr. Index – ECF No. 5-2.

[10] AR 961–75.

[11] AR 964.

testified that he served in the military for thirteen years until he was discharged in April 2003.[12] He further testified that he worked at UPS part-time as a supervisor.[13] In the course of his job at UPS, he would lift packages that weighed up to fifty pounds.[14] The plaintiff reported that while his job was technically part time, his hours would sometimes be close to forty hours per week.[15] He further reported that he was hired at UPS in part because of his prior military service but that he left his job because it was challenging for him physically and mentally.[16] The ALJ questioned the plaintiff as to whether he received treatment in 2013–2015, and the plaintiff responded that he saw a therapist every two weeks as well as a primary physician "for back pain and physical problems."[17] The ALJ also asked the plaintiff how often he drove during that same time period, and the plaintiff responded that he drove about five days a week because he picked up and dropped off his children from school.[18] Finally, the ALJ questioned the plaintiff about whether he drove to the grocery store or ran errands, and the plaintiff responded that he "shared [those] responsibilit[ies] with [his] wife."[19]

Plaintiff's counsel also questioned the plaintiff.[20] He asked the plaintiff how often the plaintiff would get headaches in 2013, and the plaintiff responded that he would get at least five headaches per month.[21] The plaintiff further testified that if he got a headache at work, he would need to leave work and lay down in a dark place at home.[22] He reported that UPS would talk to him about

---

[12] AR 968.
[13] AR 969–70.
[14] AR 970.
[15] AR 971.
[16] AR 971–72.
[17] AR 974.
[18] AR 975.
[19] *Id.*
[20] AR 976–78.
[21] AR 976.
[22] *Id.*

his five monthly absences but that he explained he was doing his best.[23] He further reported that UPS was trying to find a replacement for him but hadn't found one by the time he left his job.[24]

### 1.2  The VE's Testimony

The ALJ also questioned the VE.[25] The ALJ first asked the VE to assume a hypothetical individual with the plaintiff's same "age, education and background," who could: (1) "lift 50 pounds occasionally, 25 pounds frequently;" (2) "[s]tand and walk six hours in an eight-hour day;" and (3) "sit for six hours in an eight-hour day."[26] Further, the ALJ asked the VE to assume that the hypothetical person "should avoid being exposed to concentrated levels of environmental irritants, like dusts, fumes, and gases."[27] The ALJ asked the VE whether the hypothetical individual would "allow for past work," and the VE testified that the person could work as an office clerk or cashier.[28]

Next, the ALJ asked the VE to assume the same hypothetical individual, but with the added limitations of: (1) performing "simple, routine, repetitive tasks;" (2) having "no interaction with the general public;" and (3) having "occasional interaction with supervisors."[29] The ALJ asked whether this hypothetical person "would still allow for the representative jobs," and the VE testified that it would not.[30] The ALJ asked the VE for three additional jobs that would accommodate the added limitations, and the VE testified that the hypothetical individual could work as a housekeeper, mail clerk, or assembler.[31]

Finally, the ALJ asked the VE to assume a person with the same criteria as the previous two examples, but with the added limitations that the hypothetical person "ha[s] marked impairments,

---

[23] AR 977.
[24] *Id.*
[25] AR 978–982.
[26] AR 979.
[27] *Id.*
[28] AR 980.
[29] AR 981.
[30] *Id.*
[31] *Id.*

in terms of being to attend, concentrate, persist, and pace," meaning that the person would be "off task [fifteen percent] of the work day."[32] The ALJ questioned the VE whether such a hypothetical person could work, and the VE testified there would be "no competitive work" for that hypothetical individual.[33]

### 2. ALJ Findings

The ALJ followed the five-step sequential evaluation process to determine whether the plaintiff was disabled and concluded that he was not.[34]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity "from his alleged onset date of February 2, 2010[,] through his date last insured of June 30, 2015."[35]

At step two, the ALJ determined that the plaintiff had the following severe impairments: (1) degenerative disc disease; (2) asthma; and (3) post-traumatic stress disorder (PTSD).[36] The ALJ found the following impairments to be non-severe: (1) migraines; (2) shoulder pain; (3) seizures; and (4) obesity.[37]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations.[38] For the plaintiff's mental impairments, the ALJ found moderate limitations in interacting with others and concentrating, persisting, and maintaining pace.[39]

Before reaching step four, the ALJ determined that the plaintiff had the residual functional capacity (RFC) "to perform light work . . . except he needed to avoid concentrated levels of

---

[32] AR 981–82.
[33] AR 982.
[34] AR 952.
[35] AR 942. As outlined above, the plaintiff amended his alleged onset date to March 9, 2013. AR 964.
[36] *Id.*
[37] AR 943.
[38] *Id.*
[39] AR 944.

environmental irritants" and is "limited to simple, routine tasks with no interaction with the general public and occasional interaction with co-workers and supervisors."[40]

At step four, the ALJ determined that the plaintiff was "unable to perform any past relevant work" "[t]hrough the date [he was] last insured."[41]

At step five, the ALJ found that, through the plaintiff's last insured date, "there were jobs that existed in significant numbers in the national economy that [the plaintiff] could have performed."[42]

The ALJ concluded that the plaintiff was not disabled.[43]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (cleaned up). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

---

[40] AR 945.

[41] AR 951.

[42] *Id.*

[43] AR 952.

# GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).
>
> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).
>
> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).
>
> **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).
>
> **Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzalez v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

# ANALYSIS

The plaintiff argues that the ALJ erred by: (1) improperly weighing the VA's disability rating; (2) finding that the plaintiff's migraines were not severe impairments at step two; (3) failing to make a finding concerning the plaintiff's anxiety and depressive disorder at step two; (4) improperly weighing the opinion of the plaintiff's treating physician, his treating therapist, and a consultative examining psychologist; (5) improperly discrediting the plaintiff's testimony concerning his symptoms; and (6) improperly weighing the lay witness testimony from the plaintiff's wife. The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for an award of benefits.

**1. VA Disability Rating**

The plaintiff contends — and the defendant concedes[44] — that the ALJ did not comply with this court's February 2, 2023 order and erred for failure to provide "persuasive, specific, valid reasons" for giving less than great weight to the plaintiff's 100% VA disability rating. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The defendant contends, however, that "[t]his [c]ourt should remand the decision for additional proceedings to give the ALJ the opportunity to evaluate the VA disability ratings sufficiently."[45] But this court has already given the ALJs[46] two opportunities to follow Ninth Circuit precedent and the instructions of this court, and the ALJs have failed to do so. Indeed, in both the prior orders to remand, the undersigned explained:

> An ALJ must consider the VA's disability finding in in reaching her decision regarding a claimant's disability. *McCartney*[, 298 F.3d at 1076]. Generally, an ALJ 'must give great weight to a determination of VA disability' because: both programs serve the same governmental purpose — providing benefits to those

---

[44] Cross-Mot. – ECF 16 at 4 ("The Commissioner recognizes that the ALJ's evaluation of the VA disability ratings is largely identical to the ALJ's evaluation of this evidence in the March 2020 ALJ decision (*compare* AR 530 *with* AR 950). Thus, the ALJ's evaluation of the VA disability ratings did not adhere to this [c]ourt's order remanding on the issue of the VA disability ratings because the ALJ's explanation failed to provide "persuasive reasons for giving less than great weight to the VA determination.'") (quoting *K.J.*, 2022 WL 327709, at *8).

[45] *Id.*

[46] AR 937–39, 998–1000. ALJ Hong issued two unfavorable decisions — one on March 29, 2017, and one on March 4, 2020. ALJ Kwon issued one unfavorable decision on May 3, 2022.

unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. *Id.* A VA determination is not binding, though, and an ALJ may give less weight to a VA disability rating if she gives 'persuasive, specific, valid reasons for doing so that are supported by the record. *K.J. v. Kijakazi*, No. 20-cv-03245-LB, 2022 WL 327709 at *7–8 (N.D. Cal. Feb. 3, 2022) (quoting *McCartney*, 298 F.3d at 1076).[47]

In the ALJ's second unfavorable opinion dated March 4, 2020, the ALJ did not give great weight to the plaintiff's VA disability rating:

> The VA ratings at Exhibit 14 E and 18 indicating 70% rating for PTSD and 30% rating for physical impairments was considered and given appropriate weight in support of the claimant's allegations, although it is not binding on the decision of the undersigned pursuant to 20 CFR 404.1504 and 404.904. The longitudinal medical record does not document persistent problems related to PTSD prior to the date last insured. While there are some treatment records in 2011, there are large gaps in the treatment record prior to the date last insured, which cannot reasonably be bridged. Moreover, the VA records around the date last insured indicate the claimant was doing well psychiatrically and his mental screening exams were negative for depression. Shortly after the date last insured, his mental screenings were also negative for PTSD. As discussed above, while Ms. Ward, LSCW, provided a treatment summary indicating significant mental health problems and symptoms, she did not provide session treatment notes or objective findings in support of total disability based on mental impairment. Therefore, the undersigned has considered the determination by the VA and given it appropriate weight but is not bound by the VA determination of disability.[48]

In this court's February 3, 2022 order, the court noted that "[t]he parties agree[d] that the ALJ [in her March 4, 2020, unfavorable opinion] gave the VA's determination less than great weight." *K.J.*, 2022 WL 327709, at *8. The undersigned once more concluded that "the ALJ erred by failing to provide persuasive reasons for giving less than great weight to the VA determination" and remanded on this same ground. *Id.*

Turning to the third unfavorable decision from an ALJ on appeal before this court, the plaintiff points out — and the court agrees with the plaintiff — that the ALJ's May 3, 2023 unfavorable decision is markedly similar to the ALJ's March 4, 2020 unfavorable decision, pulling much of the

---

[47] *See also Jones*, 2018 WL 7106674, at *13 (containing slight variations in wording).

[48] AR 530.

ALJ's March 4, 2020, reasoning for giving less than great weight to the plaintiff's VA disability rating verbatim.[49]

Because the defendant concedes that the ALJ did not comply with this court's prior order or Ninth Circuit precedent, the court remands on this ground.

2. Step Two Findings

The plaintiff contends that the ALJ erred at step two because the ALJ failed to find the plaintiff's migraines "severe" and for failing to make any finding at step two concerning his anxiety and depression. With respect to the plaintiff's migraines, the plaintiff testified that he suffered from migraines about five times a month and that he would have to leave work and rest at home in a dark place when he got them.[50] He further testified that the migraines made him nauseous.[51] At step two, the ALJ "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Moreover, because the ALJ failed to consider the plaintiff's migraines when formulating his RFC, this error is not harmless. The ALJ "is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. Even though a non-severe 'impairment standing alone may not significantly limit an individual's ability to do basic work activities it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim.'" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Social Security Ruling 96-8p (1996)) (cleaned up); 20 C.F.R. § 404.1545(a)(2), (e).

Concerning the plaintiff's depression, the ALJ did not list the plaintiff's depression as an impairment at all, even though it was previously listed as "severe" in the ALJ's March 29, 2017

---

[49] *Compare* AR 530 *with* AR 950.

[50] AR 976.

[51] *Id.*

unfavorable decision[52] and the ALJ's March 4, 2020, unfavorable decision.[53] This error was harmless, however, because the ALJ discussed the plaintiff's depression when formulating his RFC.[54]

Because the ALJ's failure to consider the plaintiff's subjective migraine symptoms at step two, the court remands on this ground.

### 3. Medical Opinions

#### 3.1   Kirk Andrus, M.D. — Treating Doctor

The ALJ's reasons for giving only "partial weight" to Dr. Andrus' opinion are largely verbatim of what the ALJ provided in the March 29, 2017, unfavorable decision.[55] In its October 24, 2018, order, this court found that the reasons the ALJ provided in the March 29, 2017, unfavorable decision amounted to a "cursory analysis" that was "'not the specific and legitimate reasons that are supported by substantial evidence in the record' that *Garrison* requires" and remanded for the ALJ's reconsideration. *Jones*, 2018 WL 7106674, at *17 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)). Thus, the issue is whether the ALJ's additional reasons in the May 5, 2023, unfavorable decision are "specific and legitimate reasons that are supported by substantial evidence in the record." *Garrison*, 759 F.3d at 1012. They are not. The ALJ added:

> Specifically, in November 2011, the claimant reported he was generally 'doing well' managing his back pain, although he continued to have radiculopathy in the left lower extremity but otherwise had no major changes. He was advised to discontinue Amitriptyline. X-rays in early 2013 showed normal vertebral alignment, normal disc height, minimal osteophytes at L2 and L3, no spondylosis, and no spondylolisthesis. A March 2013 exam documented back pain but no leg pain and no focal neurologic symptoms. Additional records from the VA in March 2015 describe the claimant's back pain as 'stable.'[56]

---

[52] AR 12, 583.
[53] AR 1003.
[54] AR 946–50.
[55] *Compare* AR 16 *with* AR 948.
[56] AR 948.

ORDER – No. 23-cv-03990-LB                                11

Also in this court's October 24, 2018, order, the undersigned explained that "Dr. Andrus's progress notes must be read in the 'context of the overall diagnostic picture he draws.'" *Jones*, 2018 WL 710664, at *17 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). "In *Holohan*, the Ninth Circuit observed that the ALJ was 'selective in his reliance on [claimant's treating physician's] treatment notes' and held that merely because 'a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in the workplace." *Id.* (quoting *Holohan*, 246 F.3d at 1205). Here, the ALJ was "similarly selective" and "did not consider the 'overall diagnostic picture' reflected in Dr. Andrus's medical-source statement." *Id.* Individual appointments where the plaintiff "reported he was generally 'doing well'" and that his back pain was "stable"[57] are easily contradicted by other appointments in the record when plaintiff was doing poorly.[58] Indicating x-ray results, without also indicating the notes from the same appointment with the plaintiff's treating physician that described the plaintiff's "main problem" as being "his chronic back pain and migraine headaches,"[59] is highly selective and runs afoul of *Holohan*. 246 F.3d at 1206. The same is true for indicating that the plaintiff was "advised to discontinue Amitriptyline"[60] without indicating that the reason for such advice was due to side effects that the medication caused.[61] The court remands on this ground.

### 3.2 Kimberly Ward, LCSW — Treating Therapist

The plaintiff contends that the ALJ erred for failure to consider only one of Ms. Ward's two opinions. Ms. Ward, "as a social worker, . . . is not considered an 'acceptable medical source[]'

---

[57] *Id.*

[58] AR 324 (plaintiff visited his doctor for an evaluation "because he has missed work from back pain and headache" and was experiencing worsening symptoms), AR 446 (the plaintiff has trouble sleeping due to back pain and lower leg pain and cannot drive more than fifteen minutes without back pain), AR 499 (patient seeks chiropractic therapy to decrease his pain score, sleep better, and be able to drive longer distances).

[59] AR 432.

[60] AR 948.

[61] AR 442–43 (medication made the plaintiff "feel funny;" Dr. Andrus recommended that the plaintiff "discontinue amitriptyline secondary to side effects").

under the regulations." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010) (quoting 20 C.F.R. § 404.1513(a), (d)). Accordingly, the ALJ must provide "germane reasons" for discrediting her opinion. *Id.* (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). The ALJ concluded that Ms. Ward's medical source statement was "overly restrictive and overreaching" because: (1) it had 2003 as an onset date even though the plaintiff was employed after that time; (2) it relied on the plaintiff's VA "disability rating in determining the [plaintiff's] limitations and onset" date; (3) records from 2011 and 2014 indicate that the plaintiff was "'doing ok' from a psychiatric standpoint," had a "negative screening for depression," and denied symptoms of depression.[62]

These are not "germane reasons" for discounting Ms. Ward's medical source statement, and they do not have any bearing on her subsequent summary that she provided. *Lewis*, 236 F.3d at 511. Regarding the ALJ's first two reasons, "Question B" of the medical source statement required Ms. Ward to list, "[b]ased on [her] evaluation, treatment, and/or review of records. . . the earliest date from which the [plaintiff's] limitations have existed at the assessed severity."[63] Ms. Ward indicated the plaintiff's military discharge date of April 13, 2003.[64] Just below in the "Comments" Section, the medical source statement required Ms. Ward to provide "any clarifying comments" that she "wish[ed] to make," and Ms. Ward indicated that "[a]t [the plaintiff's exit exam from the military[, the plaintiff] received the following disability rating: 70 [percent] disabled [due to] PTSD [and] thirty [percent] disabled [due to] body injury."[65] In sum, Ms. Ward complied with the medical source statement form, giving an account of the records she used to answer "Question B" in the "Comments" Section. That is not a germane reason to discredit her opinion.

Next, the evidence the ALJ provides regarding the plaintiff's psychiatric symptoms to discredit Ms. Ward's opinion all occurred between 2011 and 2014, but her treatment summary (that the

---

[62] AR 949.

[63] AR 413.

[64] *Id.*

[65] *Id.*

ALJ ignored) indicates that she treated the plaintiff in 2015 and 2016.[66] Given that the medical evidence on which the ALJ relies is not from the same time period during which the plaintiff sought therapy, discrepancies in his symptoms this also is not a germane reason to discredit both of Ms. Ward's opinions in the record. The court remands on this ground.

### 3.3  Melody Samuelson, Psy.D. — Examining Doctor

The plaintiff next contends that the ALJ erred in giving limited weight to the opinion of examining doctor Melody Samuelson, Psy.D. The court agrees with the plaintiff. In its October 24, 2018, order, this court already addressed — and remanded for lack of specific and legitimate reasons — most of the reasons that the ALJ has provided in the current unfavorable decision on appeal, as they were included verbatim in the ALJ's March 29, 2017, unfavorable decision as well.[67] In the current unfavorable decision, the ALJ provided the following additional reasons:

> Specifically, at an April 2011 visit, he denied ongoing symptoms of depression, including insomnia, mood disturbance, or appetite changes and denied having recurrent nightmares or other symptoms of PTSD. The claimant reported he was not a combat Veteran and did not ever receive friendly or hostile fire. His provider found 'no mental health condition requiring further intervention.' The claimant stated that he had many appointments and obligations at that time and was not in need of mental health services. At a March 2013 visit, Dr. Andrus reported that psychiatrically the claimant was 'doing ok.' In 2015, he had a negative score for PTSD.[68]

An ALJ may disregard the opinion of a treating physician, whether or not controverted. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 2014). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (cleaned up). On first glance, these additional reasons pulled from Dr. Andrus's treatment notes appear to contradict Dr. Samuelson's findings, but it is

---

[66] AR 747.

[67] *Compare* AR 17 *with* AR 949.

[68] AR 949.

important to note that Dr. Andrus' medical-source statement is mostly consistent with the conclusions Dr. Samuelson draws. As this court noted in its October 24, 2018, order:

> Dr. Andrus also checked a box indicating that [the plaintiff] would be 'off task' for 25 percent [or] more of an average workday as a result of his symptoms and that he was '[i]ncapable of even 'low stress' work. Dr. Samuelson similarly noted that [the plaintiff] 'would not be appropriate in a work setting with the exception of a structured setting with professionals trained to manage disabled employees.' Both Dr. Andrus and Dr. Samuelson indicated that [the plaintiff] would be unable to work productively for long periods of time without 'special supervision.' *Jones*, 2018 WL 7106674, at *18.

Accordingly, the undersigned concludes that while the ALJ's reasons are specific, they are not legitimate or supported by substantial evidence in the record, as the treating physician who wrote them largely shares the same opinion as Dr. Samuelson. The court remands on this ground.

### 4. Plaintiff's Testimony

The plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons to reject his testimony concerning his symptoms. The court agrees.

In this court's February 3, 2022, order, the court explained that "[i]n assessing a claimant's credibility, an ALJ must make two determinations." *K.J.*, 2022 WL 327709, at *10 (quoting *Molina*, 674 F.3d at 1112). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Molina*, 674 F.3d at 1112 (cleaned up)). The ALJ satisfied this first step, as the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."[69]

Next, "if the claimant produces that evidence, and 'there is no evidence of malingering,' the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Id.* (quoting *Molina*, 674 F.3d at 1112 (cleaned up)). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). This is because "[i]n order to have a meaningful appellate review, the ALJ must

---

[69] AR 950.

explain its reasoning and '*specifically identify* the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014)). The ALJ did not credit the plaintiff's testimony because of conservative treatment, "[b]ut the ALJ failed to identify what specific testimony from the plaintiff was not credible, which was error warranting remand."[70] *Id.*

### 5. Plaintiff's Wife's Testimony

Finally, the plaintiff contends that the ALJ erred in discrediting his wife's testimony. The reasons that the ALJ provided in the unfavorable decision at issue on appeal are largely verbatim of those provided in the ALJ's March 29, 2017, unfavorable decision.[71] Here, as in the prior ALJ opinion, the ALJ found that the plaintiff's wife's testimony was "unpersuasive for the same reasons that the [plaintiff's] own allegations do not fully persuade the undersigned" because it "is overly restrictive and inconsistent with the objective medical evidence, the [plaintiff's] daily activities, and conservative treatment."[72] Given the errors discussed above concerning the ALJ's evaluation of the medical evidence and the plaintiff's testimony, the court cannot conclude that these reasons are germane to the plaintiff's wife. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

### 6. Remand for Determination of Benefits

Ordinarily, "[i]f additional proceedings can remedy defects in the original proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). The language of the "Social Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a decision

---

[70] *Id.*

[71] *Compare* AR 17 *with* AR 949–50.

[72] AR 949–50.

by the Commissioner 'with or *without* remanding the cause for rehearing.'" *Id.* (citing 42 U.S.C. § 405(g)).

In deciding whether to remand a social-security case for further proceedings or for an immediate award of benefits, the Ninth Circuit has promulgated the "credit-as-true" rule. *See Garrison*, 759 F.3d at 1019–23; *Treichler*, 775 F.3d at 1100–02; *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). The credit-as-true rule applies to both "medical opinion evidence" and to "claimant testimony." *Garrison*, 759 F.3d at 1020. Under the credit-as-true rule, a reviewing court may credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide "legally sufficient reasons" for rejecting the evidence; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citing *Ryan*, 528 F.3d at 1202); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Benecke*, 379 F.3d at 595; *Smolen*, 80 F.3d at 1292). If these three conditions are met, the court may remand for an award of benefits unless "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021; *see also McCartey*, 298 F.3d at 1076 (noting court's "discretion").

Here, the ALJ failed to provide "legally sufficient evidence" for the issues on appeal, and the record has been "fully developed," as the medical evidence at issue has been before this court three times. *Garrison*, 759 F.3d at 1020 (citing *Ryan*, 528 F.3d at 1202; *Lingenfelter*, 504 F.3d at 1041; *Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 595; *Smolen*, 80 F.3d at 1292). Although the defendant argues that this court should remand for the third time so the ALJ can properly weigh the plaintiff's VA disability rating, Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Id.* at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails let's play again' system of disability

benefits adjudication."). Finally, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* The court thus remands for the calculation and award of benefits.

## CONCLUSION

The court grants the plaintiff's motion for summary judgment, denies the defendant's cross-motion for summary judgment, and remands the case for the calculation and award of benefits.

**IT IS SO ORDERED.**

Dated: May 6, 2024

LAUREL BEELER
United States Magistrate Judge